AGUEDA CAPÓ VÁZQUEZ, demandante y apelante, *v.* SANTIAGO A. PANZARDI & Co., S. EN C., RENÉ CINTRÓN y VENTURA BARNÉS, éste en su carácter de Márshal de la Corte Municipal de Ponce, P. R., demandados y apelados.

No. 5847.—*Sometido:* Diciembre 6, 1932. *Resuelto:* Diciembre 14, 1932.

*F. Colón Díaz*, abogado de la apelante; *Tous Soto & Zapater*, abogados de Santiago A. Panzardi & Co., S. en C., apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

En pleito que siguiera Santiago A. Panzardi & Co., S. en C., contra René Cintrón Parra en cobro de pesos, embargó como de la propiedad del demandado el automóvil Oldsmobile licencia No. 4707. Entonces Agueda Capó Vázquez inició este pleito contra Panzardi reclamando como suyo el indicado auto. Panzardi contestó alegando en resumen que el verdadero dueño del automóvil era Cintrón por ser simulado el traspaso que de él hizo a su esposa Carmen Capó Vázquez y el de ésta a su hermana la demandante Agueda.

Fué el pleito a juicio practicándose una larga prueba por ambas partes. La corte lo falló en contra de la demandante, con costas, pero sin incluir en ellas los honorarios de abogado.

Apeló la demandante para ante este tribunal. En su alegato señala la comisión de seis errores.

█ El primero se formula con motivo de haber permitido la corte la declaración del testigo René Cintrón sobre otras transacciones que nada tenían que ver con la que está envuelta en este caso.

A nuestro juicio no existe el error. La parte demandada que presentó el testigo explicó que se trataba en verdad de transacciones distintas pero coetáneas a la de este caso que revelaban el propósito común de defraudar al acreedor siendo por tanto admisibles como evidencia circunstancial para probar el fraude, invocando el artículo 53, párrafo 13 de la Ley de Evidencia. Y sobre esa base fué que se permitió la práctica de la prueba.

Cuando el testigo terminó de declarar se pidió la eliminación de su testimonio porque constituía evidencia oral de contratos que se consignaron por escrito. No accedió la corte, y su resolución se señala como el segundo error.

█ Panzardi, que no era parte en los contratos, preguntó al propio René Cintrón que los había celebrado, sobre las circunstancias que concurrieron en los mismos. No hubo error. En el caso de *Nicorelli* v. *López*, 26 D.P.R. 55, esta corte dijo:

"No puede admitirse prueba oral para contradecir, variar, añadir o quitar de los términos de un documento válido. Esta regla no es aplicable cuando la controversia es entre una de las partes del contrato y otra persona que no es parte ni copartícipe en el mismo."

Además como se ha indicado aquí se trataba de probar un designio común de fraude y el caso cae en tal virtud en una de las excepciones a la regla que invoca la apelante.

En *Morales* v. *Franco,* resuelto en noviembre 22 último, (ante, pág. 66) esta corte, por medio de su Juez Asociado Sr. Hutchison, se expresó así:

"No es éste el caso típico de una parte que, mediante evidencia oral, trata de variar los términos de un contrato escrito bajo el mero pretexto de que no lo leyó. Se trata de un caso de simulación o fraude deliberados, bien establecidos no sólo por la declaración del

demandante sino también por todas las circunstancias que rodearon la transacción.''

Los cuatro errores restantes deben estudiarse conjuntamente. Sostiene la apelante que la corte erró al concluir: 1, que no quedó consumada la venta porque no hubo entrega del automóvil; 2, que la venta fué hecha sin que mediara precio y en fraude de acreedores; 3, que se hizo una donación de marido a mujer que es nula de acuerdo con la ley, y 4, que la prueba fué altamente contradictoria debiendo el conflicto resolverse en contra de la demandante.

Para fundar su sentencia, dijo, en parte, la corte de distrito:

"La evidencia en este caso, en cuanto a quién era el verdadero y legítimo dueño del automóvil cuando éste fué embargado por el Márshal de la Corte Municipal, ha sido altamente contradictoria, pues mientras la demandante Agueda Capó y sus testigos han declarado que el día del embargo (21 de junio de 1930) el automóvil reclamado estaba en posesión de la dicha reclamante Agueda Capó Vázquez, por el contrario los testigos del demandado declararon que dicho automóvil estuvo hasta el día 21 de junio de 1930, en que fué embargado por el Márshal, bajo el control y en posesión del demandado René Cintrón. Los testigos que declararon a favor de la demandante fueron la propia demandante, Agueda Capó Vázquez, su hermana Carmen Capó Vázquez de Cintrón, su cuñado René Cintrón y el primo de este último José Sánchez Parra. Los testigos que declararon a favor de la parte demandada, excepto el señor Joaquín Pou Jr., gestor de S. Panzardi & Co., S. en C., son personas que no tienen ningún interés aparente en este caso. La Corte encuentra que la preponderancia de prueba está a favor de la parte demandada y en tal sentido resuelve el conflicto de la evidencia. (Art. 162 No. 5 de la Ley de Evidencia). De toda la evidencia presentada por ambas partes, y apreciada en conjunto, resultó probado satisfactoriamente que no hubo trasmisión o venta del automóvil a favor de Agueda Capó Vázquez, toda vez que no hubo la tradición o entrega del automóvil y por tal motivo no quedó consumada la venta; porque para que una venta de bienes muebles quede consumada, la cosa vendida debe ser entregada. (Arts. 1364, 1365 y 1366 del Código Civil). Si hubo la venta a favor de Agueda Capó Vázquez, dicha venta fué hecha sin mediar precio cierto o consideración y en fraude

de acreedores. (Art. 1264 del Código Civil; Santini vs. Burgos, 34 D. P. R. 869). Si se hizo una donación por René Cintrón a su esposa Carmen Capó, tal donación es nula de acuerdo con el artículo 1301 del Código Civil; y siendo nulo el título de la donataria Carmen Capó de Cintrón, ésta no pudo trasmitirlo legalmente a Agueda Capó.''

Sostiene la apelante que la corte dejó de aplicar el artículo 1352 del Código Civil, ed. 1930, porque la cosa vendida se entiende también entregada por la entrega de las llaves del lugar en que se halle guardada. La corte no sólo se refirió al artículo 1351, ed. 1930 que dice: ''Se entenderá entregada la cosa vendida cuando se ponga en poder y posesión del comprador'', si que también al 1352, ed. 1930. Juzgando toda la prueba, incluso la de la llave, fué que la corte concluyó que no se había demostrado la trasmisión.

Al discutir en su alegato la cuestión de la donación del marido a la mujer, afirma la apelante que no hubo donación alguna.

Declarando René Cintrón dijo:

''P.—¿Usted no hizo el traspaso de la licencia expedida a favor de usted por el Departamento del Interior en mayo siete de mil novecientos veintiocho, a favor de su esposa en julio dos de mil novecientos veintiocho?—R.—Sí, señor.—P.—¿Entonces usted traspasó ese carro a favor de su esposa?—R.—Sí.—P.—¿Por qué precio?—R.—¿Por qué qué?—P.—¿Cuánto le pagó su esposa a usted?—R.—¿Cuánto me pagó? A mí, nada. Fué un regalo que yo le hice a ella; quise halagarla con eso.''

No obstante lo claro y terminante de esa declaración, la apelante insiste en que el traspaso de la licencia no significa una donación del automóvil. Alega que éste siguió perteneciendo a la sociedad de gananciales.

Como esa conclusión aislada pudiera perjudicarle la completa con la de que la venta del auto se la hizo la sociedad de gananciales actuando la esposa por estar a nombre de ella la licencia pero encontrándose presente en el acto de la entrega del dinero el marido, que asintió. Se refiere a las

páginas 115 y 116 de la transcripción. En ellas encontramos parte de la declaración del marido que es como sigue: .

"P.—¿El día diez y siete de junio de mil novecientos treinta, doña Agueda Capó estuvo en su casa?—R.—Estuvo en mi casa.—P. —¿Se practicó algo, se hizo algo entre ustedes allí?—R.—Sí. Personalmente la transferencia que le hizo mi señora a la señora Agueda Capó. . . . . . . .—P.—¿Usted personalmente lo observó eso?—R.—Sí.—P.—¿Estaba usted presente?—R.—Estaba yo presente.—P.—¿Qué se dijo allí?—R.—Me dijo mi esposa, me explicó que no se podía pagar y le debía a su hermana.—P.—¿Usted estaba delante?—R.—Sí. Estaba delante. . . . Ella le entregó, mi cuñada entregó a mi esposa trescientos dólares en billetes de banco; mi esposa le firmó la licencia e hizo el traspaso, y entonces mi cuñada hizo lo demás.—Demandante:—P.—¿Usted vió la entrega de ese dinero?—R.—Sí, señor. La ví.''

El marido donó. ¿Pudo hacerlo? No pudo de acuerdo con el artículo 1286 del Código Civil, ed. 1930, que dispone:

"Artículo 1286.—Será nula toda donación entre los cónyuges durante el matrimonio.
"No se incluyen en esta regla los regalos módicos que los cónyuges se hagan en ocasiones de regocijo para la familia.''

En sus comentarios al artículo 1354 del Código Civil Español, igual al 1286 del nuestro, Manresa estudia su origen y la razón de la regla que contiene con su acostumbrada competencia y claridad y termina diciendo:

"Las donaciones entre cónyuges son, pues, nulas por regla general. Quiere esto decir que legalmente no existen. No se trata, en nuestra opinión, de un acto anulable a voluntad del donante, sino de un acto inexistente, porque declararlo anulable equivaldría a dejar el cumplimiento de la ley a merced de la voluntad de los mismos cónyuges que la quebrantasen, quedando válidas las donaciones prohibidas por el no ejercicio de la acción durante cuatro años, lo cual es un absurdo.'' 9 Manresa. Comentarios al Código Civil, 267.

Si no puede reconocerse existencia legal a la donación que hizo el marido a la esposa en este caso fuera de la esfera del regalo moderado que pudo ofrecerle dentro de la situación económica en que se encontraba puesta de manifiesto

por los autos, claro es que la esposa no pudo vender el auto a su hermana. Y la venta tal como la describe el' marido y la propia demandante no fué hecha por la esposa â nombre de la sociedad de gananciales, sino por la esposa actuando independientemente. Conocemos lo que dijo el marido. Oigamos ahora a la propia demandante. Dijo:

"Mi hermana Carmen necesitaba doscientos pesos y fué a casa allá a San Germán a pedirlos a mi mamá, mi mamá en ese momento le dijo: 'Yo no tengo dinero; aquí la única que tiene dinero es Agueda.' Entonces mi hermana Carmen me dijo: '¿Tú no tienes dinero que me quieras prestar para unas necesidades?' Y yo le dije: 'Yo tengo un dinero que he ahorrado, que lo necesito porque lo estoy reuniendo para un viaje.' Entonces cogí y le presté los doscientos pesos, y se los dí; los llevé y se los conté, y se los dí; en algunas monedas y algunos billetes, le dí los doscientos pesos. Luego, después como usted sabe, yo estaba reuniendo para un viaje ese dinero, vine a Ponce a buscar el dinero porque lo necesitaba, y entonces ella me dijo que el dinero no lo tenía. . . . Después que vine—vine a Ponce, y entonces vine decidida a comprar el carro; y le dije a mi hermana—le traje los trescientos pesos, y le dije que yo aceptaba la compra del carro; y entonces el diez y siete de junio yo le entregué los trescientos pesos, y ella me hizo el traspaso del carro."

Pero aceptando que la venta a la demandante hubiera sido hecha por la sociedad de gananciales, sabemos que apreciando la prueba practicada decidió la corte de distrito que no tuvo tampoco existencia legal por simulada y hecha en fraude de acreedores, y analizada esa prueba no nos sentimos justificados para alterar el juicio de dicha corte que estaba en mejores condiciones que nosotros para juzgar sobre la credibilidad de los testigos.

*Debe confirmarse la sentencia recurrida.*